BEATRICE SUPRANER *vs.* CITIZENS SAVINGS BANK.

Bristol.    May 4, 1939. — June 30, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Way*, Private: creation.  *Easement.  Mortgage*, Of real estate: partial release, discharge.  *License.*

A mortgagee of two four story buildings divided by a party wall, in one of which was a stairway that was the only access to the upper stories in both buildings, by a partial release from his mortgage of the building including the stairway describing the released premises by metes and bounds and containing a provision that the release should "not in any way affect or impair" his right "to hold under the" mortgage "as security for the sum remaining due thereon . . . all the remainder of the premises therein conveyed," did not expressly or impliedly reserve an easement to use the stairway for the benefit of the building not released; and even if any such easement had been reserved, it was lost by a later discharge of the mortgage.

Upon the expiration of the term of an indenture between the owners of adjoining buildings granting the owner of one the right to use certain parts of the other for ten years, an oral agreement to continue the arrangement gave the first owner merely a license revocable at will.

BILL IN EQUITY, filed in the Superior Court on August 18, 1938.

The final decree dismissing the bill was entered by order of *Hurley*, J.

*W. Hartstone*, (*H. N. Hartstone* with him,) for the plaintiff.

*J. M. Swift*, for the defendant.

Cox, J.  This is a bill in equity in which the plaintiff seeks to establish, as appurtenant to a building owned by her, an easement of way in and over an adjoining building owned by the defendant, and to enjoin it from obstructing or in any way interfering with the alleged easement.  The case was referred to a master; his report, to which neither party filed objections, was confirmed by interlocutory decree; and a final decree was entered that the plaintiff had no easement as alleged, and dismissing the bill.  The plaintiff appealed.  The evidence is not reported; it does not appear

that the final decree was erroneously affected by the interlocutory decree (G. L. [Ter. Ed.] c. 214, § 27), and the master's findings of fact are conclusive unless it appears from the report itself that they are wrong. *General Fruit Stores, Inc.* v. *Markarian*, 300 Mass. 90, and cases cited.

The master found that, up to 1899, Merchants Block on North Main Street in Fall River, comprising the building of the plaintiff and that of the defendant, together with the land beneath them, and a strip of land some twelve feet wide, not built over, at the north side of the block, was owned in fee by Edmund C. Gifford, subject to two mortgages to the Fall River Savings Bank. A party wall divides the buildings from front to rear. The plaintiff owns that portion of the block to the north of this wall, including the twelve-foot strip, and the defendant, that portion to the south. A front entrance, stairways, and hallways in the defendant's building afford the only access to the second, third, and fourth floors of the plaintiff's building through openings in the party wall. This condition as to entrance existed as far back at least as 1895. On February 21, 1899, the Fall River Savings Bank gave a partial release of its mortgages of the southerly portion of the block (the building now owned by the defendant), the northerly bound being described as running easterly "through the middle or Centre of a brick wall one hundred twenty two and twenty five one hundredths feet to North Main Street . . . ." By deed dated February 25, 1899, with full covenants of warranty, Gifford conveyed the southerly part of the block, being the area covered by the partial release, to Edmund J. Sokoll through whom, by mesne conveyances, the defendant holds title. By instrument dated April 10, 1899, the Fall River Savings Bank discharged its two mortgages. By instrument dated April 12, 1899, Gifford gave to the Bristol County Savings Bank a mortgage of that portion of the block then held by him, including the twelve-foot strip, that is, the northerly portion now owned by the plaintiff. A portion of the description in this mortgage is, "Beginning at the south easterly corner of the lot to be described and at the north easterly corner of land of Edmund

J. Sokoll, at a stone bound, thence running westerly in line of land of said Sokoll, through the middle of a party wall, One Hundred Twenty Two and 25/100 . . . feet to a stone bound." On October 23, 1922, this mortgage was replaced by another to the Bristol County Savings Bank. The plaintiff derives her title from the Bristol County Savings Bank, which foreclosed the last described mortgage.

On February 27, 1899, Gifford and Sokoll executed an indenture by the terms of which Sokoll granted to Gifford, for a term of ten years from date, the right to the use and enjoyment of the entrance, stairways, and hallways in question, the toilet rooms on the second floor, and certain other parts of the building, and Gifford agreed to furnish heat for the second and third floors, to light the entrance, hallways, stairways, and toilet rooms, and to provide for their suitable care. At the expiration of this term of ten years the parties agreed that it might be continued without any written extension. This indenture and the deed from Gifford to Sokoll were both recorded on March 2, 1899. On July 28, 1938, the defendant, which acquired its title on April 28, 1938, notified the plaintiff that it proposed to close the openings in the wall and to confine the use of the stairways in question to the use of its own building, whereupon this bill was brought.

The master found specifically that from the time of the execution of the indenture the easement was exercised under and by virtue of the terms of the indenture, and that, from and after the determination of its term of ten years, it was exercised by extension of the operation of the indenture, and that no rights had been acquired by the plaintiff or her predecessors in title by adverse use. He also found that the indenture and deed from Gifford to Sokoll constituted one transaction, and that there was never in the contemplation of the parties to these instruments any right or easement affecting the buildings in question other than that expressed in the indenture, and that it was "not only not the intention of the parties but was contrary to the intention of the parties that there should be any right or easement other than that expressed in the indenture."

The plaintiff contends that an easement in favor of her building was reserved, either expressly or impliedly, by the Fall River Savings Bank when it released the southerly portion of the block from its mortgages, and that such easement passed to the plaintiff by mesne conveyances. The release, which covered both mortgages, contains the following language: "But this Instrument shall not in any way affect or impair the right of the said Corporation [the bank] to hold under the said mortgages as security for the sum remaining due thereon, or to sell under the power of sale in said mortgages contained, all the remainder of the premises therein conveyed." The release describes by metes and bounds the portion of the mortgaged premises that was released, the northerly bound being stated as running easterly "through the middle or Centre of a brick wall . . . to North Main Street." There is no mention of a right of easement over the portion released for the benefit of the remaining part. "But where there is a grant of land by metes and bounds, without express reservation, and with full covenants of warranty against incumbrances, we think there is no just reason for holding that there can be any reservation by implication, unless the easement is strictly one of necessity. Where the easement is only one of existing use and great convenience, but for which a substitute can be furnished by reasonable labor and expense, the grantor may certainly cut himself off from it by his deed, if such is the intention of the parties. And it is difficult to see how such an intention could be more clearly and distinctly intimated than by such a deed and warranty." *Carbrey* v. *Willis*, 7 Allen, 364, 370. In *Adams* v. *Marshall*, 138 Mass. 228, the owner of a lot of land on which was a barn conveyed by a warranty deed a portion of the land by metes and bounds, the boundary line in fact running through the barn. The grantee cut off so much of the barn as was on his own land. It was held that the grantor could maintain an action against the grantee for the loss of support to his portion of the barn. The court said, at page 237: "The plaintiff has reserved no rights in the part conveyed; there is nothing in the deed that, by construction, gives him

any rights in it; and, by implication of law, he can have none that are not strictly necessary to the enjoyment of his estate . . . we do not feel at liberty to hold that the necessity for support from the defendant's premises does not exist, because the plaintiff can erect a sufficient support upon his own land, although a way by necessity would not be implied under similar circumstances." See as to the right of support, *McKenna* v. *Eaton*, 182 Mass. 346; *Union National Bank of Lowell* v. *Nesmith*, 238 Mass. 247, 250. It is settled that the necessity of an easement for the enjoyment of land conveyed is not an absolute physical necessity but no more than a reasonable necessity. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105, and cases cited. The release in the case at bar contains no covenants as did the deeds in the cases cited, but by its language the mortgagee "discharges, acquits and relinquishes the right, title, and interest which it acquired" under its mortgages to that portion of the premises described in the release. By its terms it purports to do nothing more than to leave the parties exactly as if that part of the premises released had not been included originally in the mortgages. Furthermore, these mortgages have been discharged and thereby have become inefficacious for the purpose now claimed by the plaintiff. *Rogers* v. *Powers*, 204 Mass. 257, 262, 263. See *Chen Fong* v. *New England Telephone & Telegraph Co.* 265 Mass. 571, 578. Compare *Harlow* v. *Whitcher*, 136 Mass. 553. The case at bar is distinguishable from *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100. In that case there was a severance of title of two adjacent parcels of land by the giving of two separate mortgages, and the defendant, in whose favor an easement was established, derived his title through the foreclosure of one of these mortgages. It was not a case of the reservation of an easement, but, on the contrary, was one in which it was held that an easement in favor of the defendant could be found to have been created by implication if the parties at the time of the severance by way of the mortgages so intended, and such easement was reasonably necessary even if it was not an absolute physical necessity.

If it be assumed in the case at bar that an easement was reserved and that it was not extinguished by the discharge of the mortgages, this cannot help the plaintiff. Gifford conveyed to Sokoll by deed with full covenants of warranty, and it is settled in this Commonwealth that such a deed "estops a grantor who has an imperfect title or no title at all to the real estate conveyed, from setting up against the grantee or those claiming under him any later acquired title to the property and that such a later acquired title inures to the benefit of the grantee and his successors in title. Persons claiming by descent or by grant under the grantor after the acquisition of later title are likewise estopped." *Mt. Washington Cooperative Bank* v. *Benard*, 289 Mass. 498, 500. This rule has been held to apply to easements so as to estop the grantor from claiming or exercising any right of way over the estate by his later acquisition of an adjoining estate. *Hodges* v. *Goodspeed*, 20 R. I. 537, 539.

The plaintiff also contends that the discharge of the mortgages by the Fall River Savings Bank, and the giving of a new mortgage to the Bristol County Savings Bank, constituted one transaction; that the money used to pay the earlier mortgages was advanced by the Bristol County Savings Bank; and that, therefore, the latter bank must be held in equity to have succeeded to the same security as that held by the Fall River Savings Bank. *Worcester North Savings Institution* v. *Farwell*, 292 Mass. 568. *Home Owners' Loan Corp.* v. *Baker*, 299 Mass. 158. There is, however, no finding that these transactions were one and the same. So far as appears from the report they were entirely distinct and separate transactions. If the plaintiff desired to have a finding of fact made upon this matter, her remedy was on a motion to recommit for further report. *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 392. *Raymond* v. *Stone*, 246 Mass. 421, 426. Moreover, the mortgage to the Bristol County Savings Bank was discharged and was replaced by another given on October 23, 1922, and it was the latter mortgage that was foreclosed and through which the plaintiff derived her title. This

necessarily leaves the Bristol County Savings Bank and the plaintiff in the position of claiming through Gifford, and for the reason already stated the plaintiff is estopped from setting up any claim of easement. *Mt. Washington Cooperative Bank* v. *Benard*, 289 Mass. 498, 499.

Upon this record the plaintiff's contention that the legal title continued in the Fall River Savings Bank after the discharge of its mortgages because it did not reconvey the property to Gifford is unavailing. *Barnes* v. *Boardman*, 149 Mass. 106, 114, 115. *Flye* v. *Berry*, 181 Mass. 442, 443.

The finding of the master that the parties to the indenture relating to the use of the entrance, stairs, and hallways intended that Gifford should have no rights other than those expressly granted, negatives any presumption of an implied reservation in Gifford's favor. It appeared that at the time of the execution of the deed from Gifford to Sokoll and of the indenture, Gifford said to his son that "for the present he should not go to the expense of putting in another stairway but that he was considering building a stairway at the north side of the building at a later time." Upon the expiration of the ten-year term specified in the indenture, the subsequent oral agreement of the owners of the two estates as to the use of the way was, at most, a revocable license. *Mason* v. *Albert*, 243 Mass. 433, 437. See *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54, 56–57; *Levin* v. *Rose*, 302 Mass. 378, 381. The result is that there was no error.

*Decree affirmed with costs.*